CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
NOV 0 2 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 6:11–cr–00004 |
| v. | MEMORANDUM OPINION |
| GREGORY THOMAS MILLER *Defendant.* | JUDGE NORMAN K. MOON |

Arguing that the search warrant in this case lacked probable cause, Defendant has moved to suppress "all physical evidence, statements, and other evidence obtained or derived as a result of the unlawful search" of Defendant's vehicle and other possessions on October 16, 2010. (docket no. 41). In the alternative, Defendant requests a *Franks* hearing to determine whether the Affidavit's alleged omissions and misrepresentations would have "undercut a probable cause finding." The Court conducted a hearing on Friday, October 28, 2011 in Lynchburg, VA. For the reasons stated herein, Defendant's Motion to Suppress will be DENIED.

I. BACKGROUND

On October 16, 2010, National Park Service Rangers stopped Defendant Gregory Thomas Miller's truck at a DUI checkpoint on the Blue Ridge Parkway in Rockbridge County, Virginia. Mot. to Suppress 2; Resp. 1. The Defendant was a passenger in the vehicle; a sixteen year-old girl, "L.A.J.,"[1] was driving, unlicensed. Mot. to Suppress 2; Resp. 2. The girl admitted that she was from Michigan, and that her parents did not know she had left home with Miller. Resp. 2. According to FBI Special Agent James Lamb's Affidavit in support of the search

---
[1] L.A.J.'s full name has been withheld or redacted in all associated public papers.

1

warrant, *see* Mot. to Suppress attach. 1 (hereinafter "Aff."), a Park Ranger's check revealed that Miller's Louisiana driver's license had been suspended, and a Missing Persons/Runaway report on L.A.J. had been recorded with the National Crime Information Center (NCIC). Aff. ¶ 15.

Law enforcement asked Miller and L.A.J. to exit the vehicle and proceeded to question them. Aff. ¶ 16. Miller indicated L.A.J. sent him a text message containing directions to her home, and that he traveled from his home in Louisiana to Michigan in order to pick her up. *Id.* Miller indicated that his intent in undertaking this entire venture was to "talk to [L.A.J.'s] Dad . . . to sign emancipation papers." Aff. ¶ 17. Miller further stated that, while en route to Michigan, he stopped at a sex toy shop, buying several items. Aff. ¶ 16. For purposes of this Opinion, it is sufficient to note that the items are of the type generally meant for use in sexual encounters.

L.A.J. indicated that she and Miller drove from Michigan to Maryland, sharing hotel rooms on two separate nights. Aff. ¶ 18. L.A.J. initially denied that Miller took any pictures of her during the trip, but she later acknowledged that he had indeed taken photographs of her as they traveled. Aff. ¶ 19.

After Miller had gotten out of the truck, Ranger Marc Cyr observed a marijuana seed on the seat. Cyr Test.; Mot. to Suppress 5; Resp. 2. According to testimony at the October 28 hearing, Cyr, Ranger Kathryn Brett, and as many as seven or eight other law enforcement officers proceeded to search the truck in accordance with Park Service Procedures requiring that the contents of Miller's truck be inventoried and the truck be towed. Cyr Test.; Brett Test.; Resp. 2 at n.2. Ranger Holter conducted the inventory and arranged for the towing. Resp. 2 at n.2. During the stop and search, Park Rangers observed and seized over seventy items, including two glass pipes with marijuana residue; one smoked marijuana cigarette; marijuana seeds and leaves; a Toshiba Satellite laptop computer; six thumb drives; thirteen secure digital (SD)

2

memory cards; a Fuji FinePIX S700 digital camera; a four gigabyte memory stick; 4x DVD-R 1.4 GB/30 minutes (writeable DVD(s)); and a Sony Handycam hybrid. Aff. ¶ 20. Sometime later, Ranger Cyr asked Miller for his consent to allow Cyr to examine the contents of the laptop computer, but Miller refused, indicating that the computer contained pornographic pictures of his girlfriend, and Miller did not want Cyr to see them.[2] Aff. ¶ 21.

Defendant asserts that the officers "searched the contents [of his computer] without his consent," trying first to use the computer as they found it, but finding the battery dead. Mot. to Suppress 5. The officers then allegedly played files from thumb drives on an officer's own laptop computer[3] in the patrol car, and announced that they had "hit the mother lode." Mot. to Suppress 5–6; Miller Test. Defendant alleges that the warrantless search took approximately two hours. Mot. to Suppress 6. None of the allegations in the foregoing paragraph are included in the Affidavit, and the United States disputes both the allegation that anyone attempted to access the computer or his storage devices, Resp. 13 at n.7, and the allegation that anyone announced that they had hit the "mother lode." Cyr Test.; Brett Test. Ranger Cyr does admit that he improperly looked at photographs on Miller's digital camera without Miller's consent; it contained non-pornographic photos of L.A.J. on her trip from Michigan to Virginia. Resp. 13; Cyr Test. The Government maintains that Cyr did not inform Special Agent Lamb that he had looked at those images, and therefore Lamb did not include that information in his Affidavit. Resp. 13; Cyr. Test.; Lamb Test.

---

[2] Miller's exact words are disputed, including whether he used the word "pornographic." Ranger Cyr testified at the October 28 hearing that Miller might have actually said something to the effect of: "my [that is, Miller's] girlfriend wouldn't want anyone else to see the photographs on the computer."

[3] In his testimony at the hearing, Miller indicated that he saw law enforcement officers crowded around a patrol car and illuminated by a light being cast upward from the seat. This light, Miller believes, came from a computer in the vehicle.

3

On the night of the stop, Miller was charged with possessing marijuana and contributing to the delinquency of a minor. Aff. ¶ 22. Both are petty offenses. Government's First Mot. to Continue ¶ 1. During his trip to the Charlottesville-Albemarle Regional Jail, Miller waived his *Miranda* rights and discussed some of his history with L.A.J. Resp. 2–3. He claimed that L.A.J. did not know about the sex toy he had in the back of the truck. *Id.*

Finally, the Affidavit recounts certain information that Special Agent Lamb received after calling L.A.J.'s mother during his investigation, including the fact that for about one year, L.A.J. lived with her mother and other family members in a trailer home located on Miller's property. Aff. ¶ 23. One day, L.A.J.'s mother came home after work, and did not find L.A.J. at home as she expected; after a search, she found L.A.J., Miller, and another minor female all asleep in Miller's bed in his nearby trailer. Aff. ¶ 23; Lamb Test. All three individuals were clothed. Aff. ¶ 23. L.A.J.'s mother moved the family from the property two days later. *Id.*

Defendant argues that the "affidavit utterly fails to establish probable cause" that Miller's laptop contained child pornography or any other evidence of a crime. Mot. to Suppress 6. Moreover, Defendant alleges that the Affidavit's omissions and misrepresentations violate *Franks v. Delaware*, 438 U.S. 154 (1978), and he is therefore entitled to a hearing. *Id.*

## II. APPLICABLE LAW

### A. Probable Cause for a Search Warrant

Federal courts have long excluded evidence collected in violation of the Fourth Amendment to the Constitution of the United States. *See generally Weeks v. United States*, 232 U.S. 383 (1914), *overruled by Mapp v. Ohio*, 367 U.S. 643 (extending the exclusionary rule to Fourth Amendment violations committed by state officers). And "subject only to a few specifically established and well-delineated exceptions," the Fourth Amendment "requires

adherence to the judicial processes . . . ." *Katz v. United States*, 389 U.S. 347, 357 (1967) (citation omitted). In the Fourth Amendment context, the judicial processes requirement means that—except for those specifically established exceptions—searches conducted "without prior approval by a judge or magistrate . . . are per se unreasonable . . . ." *Id.*

In the "cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004) (quoting *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 528–29 (1967)). In other words, the issuance of a valid warrant requires probable cause; however, "[a]rticulating precisely what . . . 'probable cause' mean[s] is not possible." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). The Supreme Court's guidance on the subject is to say that probable cause is a "nontechnical, common-sense" conception, i.e., a "fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." *Ill. v. Gates*, 462 U.S. 213, 232–36 (1983).

An affidavit from law enforcement must provide the magistrate with a "substantial basis for determining the existence of probable cause . . . ." *Id.* at 239 (citing *Nathanson v. United States*, 290 U.S. 41, 54 (1933)). A "wholly conclusory" statement from an officer will not do. *Id.* A magistrate presented with a search warrant affidavit must make a decision, based on all the circumstances set forth in the affidavit, that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993) (quoting *Gates*, 462 U.S. at 238)).

All that being said, this Court does not review the magistrate's probable cause finding de novo. To the contrary, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record

supporting the magistrate's decision to issue the warrant." *Mass. v. Upton*, 466 U.S. 727, 728 (1984) (per curiam) (citing *Gates*, 462 U.S. 213).

### B. *Franks* Hearing for Omissions in the Affidavit

The Supreme Court has also considered Fourth Amendment implications when an affidavit contains allegedly false information.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Del.*, 438 U.S. 154, 155–56 (1978)). Then, at the *Franks* hearing, if the defendant can establish that the affiant officer indeed made such statements, and setting that material to the side, if the court determines that the remaining content is insufficient to support a finding of probable cause, then the warrant must be voided, and the fruits of the search excluded. *Id.* at 156.

Omitted statements receive slightly different treatment, since "an affidavit offered to procure a search warrant 'cannot be expected to include . . . every piece of information gathered in the course of an investigation.'" *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) (quoting *United States v. Colkley*, 889 F.2d 297, 301 (4th Cir. 1990)). "To satisfy the *Franks*' intentional or reckless falsity requirement for an *omission*, the defendant must show that the facts were omitted with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Blaudet*, 638 F.3d 281, 289 (4th Cir. 2011) (quoting *Tate*, 524 F.3d at 455). Therefore, to succeed on a *Franks* claim, a defendant asserting that affiant officers omitted certain facts from the affidavit must

> make a substantial preliminary showing that [the officers] omitted material facts that when included would defeat a probable cause showing—i.e., the omission would have to

be necessary to the finding of probable cause—*and* that the omission was designed to mislead or was made with reckless disregard of whether it would mislead."

*Id.*

When it comes to exactly *how* a defendant is to make a "substantial preliminary showing" that a false statement was omitted, courts have "generally conclud[ed] that such an initial showing should be made by affidavit, and . . . at a minimum, set out the particular portion of the warrant affidavit claimed to be mistaken and refer to the reason for believing that it is, in fact, mistaken." Wanda Ellen Wakefield, *Disputation of Truth of Matters Stated in Affidavit in Support of Search Warrant—Modern Cases*, 24 A.L.R.4th 1266 § 2(a) (1983). Moreover, "[w]here a defendant does no more than flatly state that an affiant officer was mistaken, or where a defendant fails to show in his initial presentation particular matters alleged to be false, the courts have not hesitated to deny the defendant any further hearing on the issue." *Id.; Franks*, 438 U.S. at 171 ("Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").

### III. DISCUSSION

### A. Probable Cause

Defendant offers that the "information presented in the affidavit bears no connection to child pornography" and therefore fails to establish probable cause. Mot. to Suppress 7. Defendant posits that cases on the issue have established that mere allegations of improper conduct with a minor are insufficient to establish probable cause to search for child pornography. Mot. to Suppress 7–8. While Defendant accurately summarizes the reasoning from the specific cases he cites in his Memorandum in Support of his Motion to Suppress, I find that the Affidavit at issue here provides much more than bare allegations of prior child sex abuse; instead, it contains more than sufficient allegations to allow the issuing magistrate to conclude that there

was probable cause to find that Miller's computer and other devices contained evidence of child pornography, or Miller's contribution to the delinquency of a minor, or both.

Defendant first discusses *Virgin Islands v. John*, No. 09–4185, 2011 WL 3559933 (3d Cir. Aug. 15 2011). Although the United States Court of Appeals for the Third Circuit set out only to determine whether the "good faith" exception would apply in the case, Defendant argues that portions of its analysis are relevant to the instant case. In *John*, the panel upheld the suppression of evidence when the warrant to search the defendant's home and computer was not supported by probable cause, given that the affidavit only alleged that the defendant had inappropriately touched children and had written inappropriate things about children in his notebook. The affidavit asserted that "persons who commit sexual crimes involving children customarily hide evidence of such offenses, including notes, photographs, [and] computer files, in their homes and on their computer[s]." *Id.* at *1. The Third Circuit found that because the affidavit failed to assert any belief that a person who has sexually assaulted a child is also likely to collect child pornography,[4] the "catalogue of the affidavit's 'indicia of probable cause' with respect to the child pornography [was] completely empty." *Id.* at *6.

The Second Circuit and Sixth Circuits have reached similar conclusions. *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) ("Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court."); *United States v. Hodson*, 543 F.2d 386, 293 (6th Cir. 2008) (stating, in the context of the "good faith" exception, that it was "entirely unreasonable . . . for the officer executing the warrant either to infer that the nexus [between

---

[4] The court declined to address the validity of such an assumption, and merely stated that even if such an assumption is reasonable, it is nowhere stated in the affidavit. *Id.*

child molestation and possession of child pornography] himself or to rely on her own subjective knowledge [of the existence of such a nexus] to claim reasonable reliance on the warrant.").

The facts in the case before this Court, however, differ substantially from *John*, *Falso*, and *Hodson*. Far from providing "absolutely no basis to believe that Defendant possessed child pornography in his house or on his computer," as Defendant asserts, the Affidavit sworn out by Special Agent Lamb mentions all of the following events: that Park Rangers stopped Miller, who was then fifty-seven years old, in a vehicle with a minor, L.A.J.; that Miller traveled from Louisiana to Michigan to pick up L.A.J.; that, while en route to Michigan, Miller stopped and purchased items for sale in a sex toy shop; that Miller had taken L.A.J. from her home without her mother's permission; that Miller and L.A.J. shared two hotel rooms during the course of their journey; that L.A.J., after initially denying it, acknowledged that Miller had taken photographs of her as they traveled; that the Park Rangers observed and seized a laptop computer, numerous digital storage devices, a portable camcorder, and a digital camera; that Miller indicated that there were pornographic pictures of his girlfriend (or images that his girlfriend would not want law enforcement to view) on the computer; and finally that Miller and L.A.J. knew one another since at least 2008, when L.A.J.'s mother witnessed Miller asleep in the same bed with L.A.J. and another minor female, although all parties were clothed.

With the foregoing allegations all contained on the face of the affidavit, I am convinced that an "assessment of probabilities in particular factual contexts" pursuant to *Gates* could easily provide an issuing magistrate with a substantial basis for determining that probable cause existed to believe that Miller's computer and other items contained images of child pornography. The Affidavit included Defendant's admission that the laptop computer contained pornographic photographs of his girlfriend, and knowing that L.A.J. was Defendant's only traveling

9

companion, the magistrate was reasonable to have inferred that Defendant was referring to L.A.J. with such a statement. Defendant's later attempts to deflect the meaning of his statement by claiming that he was referring to some other woman are unavailing.

Finally—and perhaps more easily disposing of all of Defendant's contentions—even if the Affidavit lacked probable cause to seize evidence of child pornography, it also establishes a fair probability that Miller willfully contributed to, encouraged, or caused any act, omission, or condition which renders a child delinquent, in deed of services, in need of supervision, or abused or neglected in violation of Va. Code § 18.2–371. While it seems clear that the Government is, and has always been, more interested in the child pornography charges, the Affidavit does list the Virginia Code violations throughout. Considering the factual allegations set forth above in the context of a search for evidence of Defendant contributing to the delinquency of a child, I find there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.

At the October 28 hearing, and in its Response to Defendant's Motion to Suppress, the Government argued that even if this Court found in Defendant's favor on the probable cause consideration, then the "good faith" exception would operate to save the evidence from suppression. Because I affirm the magistrate's probable cause finding, I need not consider the good faith exception argument.

### B. *Franks* Hearing

In the alternative to suppression, Defendant argues that a *Franks* hearing is required. He asserts that the Affidavit that led to the search warrant "omits at least several facts" including an explanation of "why the car was initially searched, and [the fact that] an illegal warrantless search of the contents of Defendant's computer was conducted." Mot. to Suppress 13.

Defendant asserts that "the results of an illegal search could not be used to establish probable cause," *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993), and such omissions are "troubling and raise[] the possibility that other facts may have been omitted which would undercut a probable cause finding." Mot. to Suppress 14. Pursuant to Fourth Circuit precedent, the Defendant must show that the alleged omissions (1) exist, (2) were designed to mislead or were made with reckless disregard of whether they would mislead, and (3) if included, would destroy probable cause. I find that Defendant has failed to make the requisite showing.

In its Response to Defendant's Motion to Suppress, as well as in testimony by both Special Agent Lamb and Park Ranger Cyr, the Government claims that the affiant officer, Special Agent Lamb, did not know of Ranger Cyr's earlier unauthorized search of Miller's digital camera. Since Lamb did not know about the earlier search, the United States argues that the preliminary *Franks* test for omissions, discussed above, cannot be satisfied. The cases state that a *Franks* hearing is proper when an *affiant* omits certain facts with the intent to mislead the *magistrate* (or with reckless disregard of whether they might mislead). I know of no cases—and Defendant has cited none—holding that omissions made by one law enforcement officer (here, Ranger Cyr) to another (here, Special Agent Lamb), who, in turn, did not know to inform the magistrate of certain facts, would entitle a defendant to a *Franks* hearing.

Moreover, I have seen no evidence to corroborate Defendant's assertions that law enforcement improperly searched other items, including the thumb drives that Defendant alleges the Government played on a patrol car laptop. The Government noted in the hearing that it only found child pornography on the computer, and only intends to introduce the computer evidence at trial. The Defendant's bare declaration that law enforcement officers stated that they had "found the mother lode" after improperly searching thumb drives—devices that the Government

now states contained no evidence of child pornography—does not rise to the "substantial preliminary showing" level.

It should be remembered that the Fourth Circuit "has construed the Supreme Court's opinion in *Franks* . . . very strictly . . . ." *Simmons v. Poe*, 47 F.3d 1370, 1383 (4th Cir. 1995). I will deny Defendant's request for a *Franks* hearing.

## IV. CONCLUSION

I find that there existed substantial evidence in the record for the magistrate to conclude that Special Agent Lamb's Affidavit contained probable cause that the computer seized from the vehicle contained evidence of either child pornography, or the Defendant's contribution to the delinquency of a minor, or both. I will uphold the magistrate's finding.

While Defendant's allegations that law enforcement conducted an initial unlawful search before seeking a warrant could be constitutionally significant if supported, Defendant has not met the burden required to entitle him to a *Franks* hearing. Although Defendant testified to his belief that law enforcement improperly searched his computer the night of the stop, Defendant has made no showing that the facts were omitted with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, or that when considered, the omissions undercut the probable cause showing. Defendant's Motion is hereby DENIED.

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 2nd day of November, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE